UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. |
| | : | |
| v. | : | (Judge          ) |
| | : | |
| PAUL HELRING, | : | Electronically filed |
| Defendant | : | |

# INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

## INTRODUCTION

At times material to the Information:

1. The Scranton Police Department (hereafter, "SPD") was the police department for the City of Scranton and the second largest municipal police department in the Middle District of Pennsylvania. SPD had the authority to enforce the criminal laws of the Commonwealth of Pennsylvania and the local ordinances of the City of Scranton. For each of years 2020, 2021, and 2022, SPD and the City of Scranton received annual benefits, in the form of federal grants, from the United States in excess of $10,000.00.

1

2. Skyview Apartments (hereafter, "Housing Unit 1") was an apartment complex located at 50 Crown Circle in Scranton, PA. Pursuant to agreement and understanding, SPD provided supplemental security services to Housing Unit 1. Specifically, SPD officers generally working four hour shifts provided roving police patrols of the area in and around the complex during the evening and late night hours. The patrols occurred year round and the number of patrols worked by SPD officers varied per week. Housing Unit 1 made periodic payment to SPD and the City of Scranton in an amount that was a function of the number of hours worked by SPD officers patrolling the area.

3. Village Park Apartments (hereafter, "Housing Unit 2") was an apartment complex located at 100 Townhouse Boulevard in Scranton, PA. Pursuant to agreement and understanding, SPD provided supplemental security services to Housing Unit 2. Specifically, SPD officers generally working four and five hour shifts provided roving police patrols of the area in and around the complex during the evening and late night hours. The patrols occurred each year from Memorial Day to Labor Day and the number of patrols

actually worked by SPD officers varied each week. Housing Unit 2 made periodic payment to SPD and the City of Scranton in an amount that was a function of the number of hours worked by SPD officers patrolling the area.

4. Midtown Apartments (hereafter, "Housing Unit 3") was an apartment complex located at 670 Adams Avenue in Scranton, PA. Pursuant to agreement and understanding, SPD provided supplemental security services to Housing Unit 3. Specifically, SPD officers generally working four hour shifts provided roving police patrols of the area in and around the complex during the evening and late night hours. The patrols occurred year round and the number of patrols varied per week. Housing Unit 3 made periodic payment to SPD and the City of Scranton in an amount that was a function of the number of hours worked by SPD officers patrolling the area.

5. Hilltop Manor and Valley View Terrace (hereafter collectively, "Housing Unit 4") were two nearby apartment complexes in Scranton, PA that were managed by the Scranton Housing Authority. Pursuant to agreement and understanding, SPD provided supplemental

security services to Housing Unit 4. Specifically, SPD officers generally working four hour shifts provided roving police patrols of the area in and around the complexes during the evening and late night hours. The patrols occurred year round and the number of patrols varied per week. The patrols were financed using federal funding provided yearly to the Scranton Housing Authority by the United States Department of Housing and Urban Development. The Scranton Housing Authority made periodic payment to SPD and the City of Scranton in an amount that was a function of the number of hours worked by SPD officers patrolling the area.

6. Defendant PAUL HELRING was a police officer for SPD, holding the rank of patrolman. Helring also served as SPD's elected Union President of the Fraternal Order of Police.

7. As Police Union President, Helring was given a special assignment within SPD, specifically, from approximately 2017 until on or about April 1, 2022, Helring served as manager of SPD's so-called "extra duty assignments". Thus, Helring's regular work duties, as performed during his standard daily work shift, (Monday through

Friday, 7:30 AM to 3:30 PM), consisted of union-related work and the oversight of the extra duty program.

8. A category of overtime available to SPD officers based primarily on seniority, extra duty assignments included the roving patrols at Housing Units 1, 2, 3, and 4. Helring oversaw and managed the scheduling of SPD officers for the patrol shifts at these locations. Helring was responsible for approving the patrol shifts submitted by other SPD officers, for documenting the patrol shifts worked by SPD officers, and for invoicing Housing Units 2, 3, and 4 for the patrol shifts worked by SPD officers. As to Housing Unit 1, Helring was the point of contact within SPD for personnel at Housing Unit 1 and received the periodic invoices that personnel at Housing Unit 1 prepared based upon the written patrol log forms that the officers who worked the shifts at Housing Unit 1 were required to complete after their shifts.

9. For each two-week pay period, Helring submitted the total extra duty hours worked by each SPD officer to the SPD pay clerk, who relied upon these submissions to do payroll. Officers were then paid in their bi-weekly pay based on the shifts appearing on the documentation

provided by Helring to the pay clerk. SPD and the City of Scranton were later reimbursed by the respective housing units for the monies paid out to the individual officers.

10. As a senior SPD officer, Helring himself worked extra duty patrol shifts at the housing units. While serving as the manager and coordinator of the entire program of extra duty assignments, in addition to the reoccurring patrol shifts that came to him through seniority, Helring was also able to schedule himself in for any open or unclaimed patrol shifts at the housing units. Helring was paid at a rate of between approximately $33.90 and $34.42 for each hour of each patrol shift that he claimed to work.

11. On or about April 1, 2022, Helring left his role as coordinator of SPD extra duty assignments, although he continued to sign up for extra duty patrol shifts until his placement on administrative leave on or about May 17, 2022.

## COUNT 1
### 18 U.S.C § 666
### (Theft Concerning Programs Receiving Federal Funds)

12. The factual allegations of paragraphs 1 through 11 are incorporated here.

## False Invoices Sent to the Housing Units

13. During the time in which he managed SPD extra duty assignments, PAUL HELRING regularly misrepresented, and caused to be misrepresented, on invoices that he prepared and sent to Housing Units 2, 3, and 4, that he had worked shifts at the respective housing units that he knew that he would not work and had not worked.

14. For example, on or about September 13, 2021, PAUL HELRING submitted an invoice to Housing Unit 2 on which he misrepresented, and caused to be misrepresented, that he had worked a patrol shift at Housing Unit 2 on July 25, 2021, into the early morning hours of July 26, 2021, from 10pm to 3am, when in fact Helring was at his personal residence for that entire shift.

15. For example, on or about December 8, 2021, PAUL HELRING submitted an invoice to Housing Unit 3 on which he misrepresented, and caused to be misrepresented, that he had worked a patrol shift at Housing Unit 3 on November 26, 2021, from 6pm to

10pm, when in fact Helring was at his personal residence for that entire shift.

16. For example, on or about August 16, 2021, PAUL HELRING submitted an invoice to Housing Unit 4 on which he misrepresented, and caused to be misrepresented, that he had worked a patrol shift at Housing Unit 4 on August 6, 2021, from 8pm to 12am, when in fact Helring was out of town during that entire shift.

### False Patrol Logs Sent to the Housing Units

17. During the time in which he managed SPD extra duty assignments, PAUL HELRING also misrepresented, and caused to be misrepresented, on patrol logs utilized by Housing Units 1, 2, and 4 that Helring filled out and provided to Housing Units 1, 2, and 4, that he had worked shifts at the housing units that he knew that he would not work and had not worked.

18. For example, on or about July 18, 2021, PAUL HELRING submitted a patrol log form to Housing Unit 1 on which he misrepresented, and caused to be misrepresented, that on July 18, 2021, he was "in service" at 19:00 hours at Housing Unit 1 and "out of

service" at 23:00 hours, and that during his shift at Housing Unit 1, he "patrolled complex" and "monitored traffic", when in fact Helring remained at his personal residence for that entire 4-hour time period.

19. For example, on or about September 5, 2021, PAUL HELRING submitted a patrol log form to Housing Unit 2 on which he misrepresented, and caused to be misrepresented, that on September 5, 2021, he was "in service" at 17:00 hours at Housing Unit 2 and "out of service" at 22:00 hours, and that during his shift, he "patrolled complex" and "monitored traffic," when in fact Helring remained at his personal residence for that entire 5-hour time period.

20. For example, on or about January 14, 2022, PAUL HELRING submitted a patrol log form to Housing Unit 4 on which he misrepresented, and caused to be misrepresented, that on January 14, 2022, he was "in service" at 20:00 hours at Housing Unit 4 and "out of service" at 24:00 hours, and that during his shift, he "patrolled complex" and "monitored traffic", when in fact Helring remained at his personal residence for that entire 4-hour time period.

## False Documentation Provided to SPD Pay Clerk

21. During the time in which he managed SPD extra duty assignments, PAUL HELRING also regularly concealed material facts by omitting from SPD's online scheduling and timekeeping system, known as "PlanIt Police," the complete and total number of extra duty patrol shift hours for which he sought compensation from SPD's pay clerk, to whom he provided a different, inflated number of extra duty patrol shift hours worked.

22. For example, for the pay period from November 6, 2021 to November 19, 2021, PAUL HELRING entered, and caused to be entered, into PlanIt Police, that he worked a total of 4 extra duty patrol shift hours, but provided to the SPD pay clerk documentation claiming that he worked a total of 32 extra duty patrol shift hours and, as a result, received compensation in his biweekly pay for 32 hours worked. In fact, Helring worked far fewer than 32 hours at the housing units during this pay period.

23. For example, for the pay period from April 24, 2021 to May 7, 2021, PAUL HELRING entered, and caused to be entered, into PlanIt

Police, that he worked 0 extra duty patrol shift hours, but provided the SPD pay clerk with documentation claiming that he worked a total of 24 extra duty patrol shift hours and, as a result, received compensation in his biweekly pay for 24 hours worked. In fact, Helring worked far fewer than 24 hours at the housing units during this pay period.

### False Claims to Have Worked Overlapping Shifts

24. During the time in which he managed SPD extra duty assignments, PAUL HELRING also regularly backfilled the schedule of potential extra duty patrol shifts at the housing units by signing himself up for extra duty shifts that had already passed and that he knew that neither himself nor any other SPD officer had worked, and on numerous occasions slotted himself in for conflicting shifts at up to three different housing units that he could not possibly have simultaneously worked.

25. For example, on or about November 18, 2021, Helring submitted a patrol log form to Housing Unit 1 claiming to have worked an extra duty shift at Housing Unit 1 on November 18, 2021, into the early morning of November 19, 2021, from 10pm to 2am. However, on

or about November 25, 2021, Helring submitted an invoice to Housing Unit 3 claiming to have worked an extra duty shift at Housing Unit 3 during the early morning hours of November 19, 2021, from 12am to 4am, a shift which overlaps by 2 hours the aforementioned shift at Housing Unit 1. Moreover, on or about November 25, 2021, Helring also submitted an invoice to Housing Unit 4 claiming to have worked an extra duty shift at Housing Unit 4 during the early morning hours of November 19, 2021, from 12am to 4am, a shift which overlaps entirely with the aforementioned 4-hour shift at Housing Unit 3.

26. For example, on or about September 13, 2021, Helring submitted an invoice to Housing Unit 2 claiming to have worked an extra duty shift at Housing Unit 2 on August 21, 2021, from 5pm to 10pm. However, on or about August 21, 2021, Helring submitted a patrol log form to Housing Unit 1 claiming to have worked an extra duty shift at Housing Unit 1, on August 21, 2021, into the early morning of August 22, 2021, from 9pm to 1am, a shift which overlaps by 1 hour the aforementioned shift at Housing Unit 2. Moreover, on or about August 30, 2021, Helring also submitted an invoice to Housing

Unit 4 claiming to have worked an extra duty shift at Housing Unit 4, on August 21, 2021, into the early morning of August 22, 2021, from 10pm to 2am, a shift which overlaps by 3 hours the aforementioned shift at Housing Unit 1.

## Statutory Allegation

27.   From on or about March 26, 2021, to on or about May 16, 2022, in Lackawanna County, in the Middle District of Pennsylvania, the defendant,

**PAUL HELRING**,

being an agent of an organization which received benefits in excess of $10,000.00 under a federal program involving a grant, contract, subsidy, loan guarantee and other form of federal assistance in any one-year period, namely, the Scranton Police Department and the City of Scranton, knowingly embezzled, stole, obtained by fraud, and otherwise without authority converted to his own use property valued at $5,000.00 and more that was owned by and was under the care, custody and control of the Scranton Police Department and the City of Scranton, to wit, over $5,000.00 in hourly compensation paid to him for extra duty

patrol shift hours at local Housing Units 1, 2, 3 and 4 that he claimed to work and received compensation for working but did not work.

In violation of Title 18, United States Code, Section 666(a)(1)(A).

JOHN C. GURGANUS
Attorney for the United States
Acting Under Authority Conferred
by 28 U.S.C. § 515

_____          11-21-2023
JEFFERY ST JOHN                    Date
Assistant United States Attorney

14